RILEY KNOWLES

*v.*

HIRAM KNOWLES.

*Filed at Springfield April 5, 1889.*

1. PRACTICE—*trial by the court—propositions of law, and of fact.* Where the same proposition of law is substantially embraced in one "held" by the court as in one asked and refused, there will be no error in refusing to give the latter.

2. In a suit upon promissory notes, in which want of consideration and fraudulent misrepresentation, leading to their execution, are set up in defense, where the evidence is conflicting, a proposition submitted to the court trying the case without a jury, that the plaintiff is not entitled to recover, is a proposition of fact, and not of law, and therefore properly refused.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Menard county; the Hon. CYRUS EPLER, Judge, presiding.

Mr. T. W. McNEELY, and Mr. N. W. BRANSON, for the appellant.

Mr. S. H. BLANE, for the appellee.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was a suit in assumpsit, brought by Hiram Knowles against Riley Knowles, to recover the amount of two promissory notes executed by the defendant to the plaintiff. Under proper pleadings the defendant set up as a defense want of consideration and also certain false representations whereby he was induced to execute said notes, and a trial before the court, a jury being waived, resulted in a judgment in favor of the plaintiff for $669.70 and costs. This judgment was affirmed by the Appellate Court on appeal, and the judges of that court having certified that the case involves questions of law of such importance, on account of collateral interests, that it should be passed upon by this court, the record has been brought here by a further appeal.

The plaintiff and defendant are brothers, and they with their brother Prettyman Knowles are the only surviving children of Marvel Knowles, a former resident of Gibson county, Indiana, and who died at that place testate July 31, 1883. In April, 1883, the defendant was indebted to his father in the sum of $2716, evidenced by three promissory notes, two of which were secured by a mortgage on the defendant's land in Illinois. On the 24th day of that month the defendant's father surrendered and delivered said notes to the defendant, no part of them then being paid, and executed to him a release of said mortgage, and on the second day of May following, the defendant executed under his hand and seal, acknowledged and delivered

to his father an instrument in which, in consideration of the surrender to him of said notes and the execution of said release, he, for himself and his heirs, forever relinquished, surrendered and quit-claimed all his present and prospective interest, title or claim to any part or portion of the personal or real estate of his father.

The will of Marvel Knowles was executed September 9, 1881, which was prior to the execution by the defendant of said relinquishment of his interest in his father's estate. No change however was made in the will, and after the death of the testator it was duly probated in Gibson county, Indiana. The will, by its terms, after providing for the payment of the testator's debts and certain specific bequests, directed that the residue of his personal estate should be equally divided between his three sons; and also, after giving a certain tract of land to a grand-daughter, devised the residue of his real estate in equal shares to his three sons, the shares of Riley and Prettyman to go to them and their heirs and assigns forever, and the share of Hiram to go to him during his natural life, and at his death to his children.

The defendant testifies that, at the time of the execution of the instrument of May 2, 1883, he intended to relinquish his expectancy in his father's estate, but on examination of the will after his father's death, he came to the conclusion that he was placed on the same footing with his brothers, and he thereupon made claim to one-third of the estate. After some discussion, his brothers executed to him a deed conveying, as was supposed, the undivided one-third of all the lands belonging to his father's estate, said deed being executed, according to the recitals therein contained, in consideration of one dollar, "and to compromise and settle all differences and rights of action and supposed rights of action and matters in dispute between the parties hereto." The evidence as to the negotiations which led to the execution of this deed is very confused and uncertain, leaving it altogether in doubt as to what con-

troversies were in fact taken into consideration by the parties. It is not shown that the defendant at that time urged any claim beyond the right under the will to an undivided one-third interest in the lands. That he subsequently claimed the same interest in the personal estate may be fairly inferred from the evidence, although the amount of the personal estate, after the payment of debts and specific legacies, is not shown.

Some time after the execution of the deed last mentioned, it was discovered that it did not correctly describe the lands intended to be conveyed, a certain quarter section being therein described as only a forty acre tract, and negotiations were thereupon set on foot for the correction of the deed. The matter of such correction, as well as all other controversies with the defendant in relation to their father's estate was placed by the defendant's brothers in the hands of their attorneys in Indiana, and the defendant was referred by his brothers to them. The defendant thereupon called upon said attorneys and had an interview with them which lasted from four o'clock in the afternoon to three o'clock the next morning. In that interview said attorneys insisted that the defendant was still liable to the estate for the amount of the notes surrendered by his father, and that the same could be collected of him with interest, and that if he did not pay or account for the notes, he could not share in the distribution of his father's estate. The defendant, on the other hand, insisted that the notes were cancelled and that he was owing the estate nothing. As the result of the interview, said attorneys made a proposition which the defendant accepted, that to settle the entire controversy, the defendant should execute his promissory notes for two-thirds of the $2700, one-half payable to each of his brothers, and thereupon the defendant executed his six promissory notes for $300 each, three payable to his brother Hiram and three to his brother Prettyman. The notes in suit are two of the notes executed to Hiram. Soon afterward, and in pursuance of the arrangement then made, the defendant reconveyed to

8—128 ILL.

his brothers the lands conveyed by the deed containing the erroneous description, and a new deed was executed to him by which his brothers conveyed to him an undivided one-third of said lands by a correct description. That deed contained the following clause : "And it is further agreed by the grantors herein, that they, as heirs of Marvel Knowles, do hereby release the grantee, the said Riley Knowles, from any and all obligations and releases which the said Riley Knowles incurred and referred to in a certain release executed by him to said Marvel Knowles on the 2d day of May, 1883."

It is insisted by the defendant that in the settlement with said attorneys he was overreached and defrauded, and also that the notes then given, in view of the previous settlement between the parties, were wholly without consideration. It will readily be seen from the foregoing statement that the questions thus raised are purely questions of fact, and as all questions of that character have been conclusively settled adversely to the defendant by the judgment of the Appellate Court, there is nothing left for us to do but to adopt the conclusions of that court.

The only questions of law presented by the record are those which arise upon the written propositions which the defendant asked the Circuit Court to hold as the law in the decision of the case. Nine such propositions were submitted on behalf of the defendant, the first five of which were marked "held" by the court. Of the four propositions refused, the first and second are substantially embodied in those marked "held." The third and fourth are simply to the effect that under the evidence the plaintiff was not entitled to recover. As the plaintiff made out his case by the production of the promissory notes sued on, and as the defenses urged were want of consideration, and misrepresentations by the plaintiff's attorneys whereby the defendant was induced to execute the notes, the adoption of those propositions would have been tantamount to holding as a matter of law that said defenses, or one of them, had been

conclusively established. The evidence however is by no means
so clear and satisfactory as to necessitate the conclusions con-
tended for, but was susceptible of constructions leading to
conclusions adverse to the defenses interposed. The questions
presented were therefore questions of fact and not of law, and
it would have been erroneous to hold as a matter of law that
said defenses were proved.

There being no error in the record the judgment of the Ap-
pellate Court will be affirmed.

*Judgment affirmed.*